LAWRENCE MORRISSEY, SHERIFF, FOR USE, ETC.,
v.
JAMES FEELEY AND MATTHEW WHITE.

*Exemptions—Replevin—Bond—Evidence—Instructions—Executions.*

1. It is the duty of the officer serving an execution to inform the debtor of the nature of the writ.

2. Where there is no evidence on which to base an instruction it should be refused.

3. In an action on a replevin bond, given in replevin of goods in the hands of an officer under execution, it is *held:* That the jury were justified in finding that defendant's failure to present a schedule of his property within ten days after the executions were served, was due to misrepresentations of the officer, and did not deprive him of his right to claim his exemptions, and that there was no error in giving and refusing instructions.

## [Opinion filed June 7, 1890.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. CLARENCE GRIGGS, for appellant.

To one familiar with the earlier legislation and the decisions of our courts thereon the evident purpose of this statute of 1887 is to fix a time within which a debtor must present his schedule if he would preserve his rights. Under former statutes it was repeatedly held that the debtor must present his schedule "within a reasonable time." Griffin v. Maxwell, 23 Ill. App. 405.

What constituted "a reasonable time" depended upon the particular circumstances surrounding each case. Not until those circumstances had been reviewed by a court of appeal could a debtor ascertain whether he had presented his schedule "within a reasonable time." To cover this point expressly the statute fixed ten days. The statute of 1887 seems too plain for discussion. The court is referred to Alden v. Yeoman, 29 Ill. App. 53. That was replevin for chattels levied on by a constable under three executions. The executions were read to the defendant July 16, 1887. The court say: "He says the officer told him he need not make a schedule at that time. This is denied by the officer. It is immaterial. The case is governed by the act of 1887, which was then in force, which required the defendant to make his schedule 'within ten days after notice of the execution.' On the 15th of August the officer again went to the defendant and made the levy, whereupon the defendant made and ten-

dered his schedule, which, being disregarded, the present action was brought, in which there was a judgment for the plaintiff. The law was not complied with in regard to the schedule and the plaintiff had no cause of action. The schedule came too late."

It is true that exemption laws are to be liberally construed, but, as was said by the Supreme Court of Illinois in Finlen v. Howard, 126 Ill. 259, " We have had frequent occasion, in construing exemption statutes, to say that they should not be strictly construed. * * * In the proviso under consideration, however, it would seem there is no room for construction.. It is not easy to perceive how language could be more direct and positive, clear and unambiguous than is here employed. * * * When the legislative will, in matters within its domain, is plainly and clearly expressed, we are not at liberty, because of supposed hardship, or upon considerations of policy, to wrest the words of the statute from their plain import and meaning."

According to Feeley's own testimony, an execution is read to him September 11, 1888, and twelve days thereafter he presents a schedule. To say that such schedule was presented in time is certainly "to wrest the words of the statute from their plain import and meaning."

The earlier legislation of the State required no affirmative act on the part of the debtor. The statute of 1877 gave the debtor larger exemptions, but in return for enlarged rights exacted more duties, and said if he desired to avail himself of his rights he must perform those duties, and unless he complied with the statute strictly the debtor forfeited his rights. Griffin v. Maxwell, *supra;* Cook v. Bohl, 8 Ill. App. 293; Biggs v. McKenzie, 16 Ill. App. 286.

Mr. JAMES J. CONWAY, for appellees.

The policy of the law has been these later years to liberally construe the exemption laws in favor of the honest debtor. I can not, therefore, agree with the theory of counsel for appellant, that no matter whether the debtor made an honest attempt to bring himself within the letter of the statute or not,

or whether he was thoroughly informed by the constable as to the facts, yet if the constable makes the formal demand, and by some base ingenuity contrives to keep the debtor from scheduling for the space of ten days, it will thus deprive the debtor of everything of which he is possessed.

My theory of the exemption law is this: that if a constable wilfully or even through mistake, and unintentionally, misleads a debtor (not as to a matter of law, but of fact,) so that the debtor is not made aware of the fact that there is an execution in the hands of the constable to which his property is liable, then the debtor is not compelled to present his schedule to the constable until he is actually and properly informed by the constable what the writ is that he holds against him. In other words the ten days do not begin to run until the debtor has the actual knowledge of the nature of the writ.

I desire to refer the court to the following cases which were decided prior to the passage of the present statute: Blair v. Parker, 4 Ill. App. 409, and Johnston v. Willey, 21 Ill. App. 354.

According to the decisions of several of the courts it was the duty of Calkins to inform Feeley of his rights. For this proposition see the following: State v. Romer, 44 Mo. 99; State v. Barada, 57 Mo. 562; Cook v. Scott, 1 Gilman, 333; McClusky v. McNeely, 3 Gilman, 578; Smith v. Palmer, 46 Ill. 398; Thompson on Homesteads and Exemptions, 821.

*Per Curiam.* This was a suit brought on a replevin bond given in the suit of James Feeley against Moses Calkins, a constable, who held certain executions in favor of Mary K. Davis, against Feeley, issued from before a justice of the peace and given preliminary to the service of the writ of replevin, to the sheriff, as the statute provides. The property replevied was one span of gray horses and harness and fly net, one two-horse wagon, top box and seat, together with whiffletrees and other personal property. The replevin bond was in the usual form and provided that if James Feeley should prosecute his suit with effect and without delay and

make return of the said property, if return thereof should be awarded, and save and keep harmless the sheriff in replevying the same, then the obligation to be void, otherwise to remain in force. The declaration alleges that the Circuit Court adjudged that said Feeley should take nothing by said writ and that return was awarded, of the property, and that said James Feeley did not make return of the property, demanding $600 as debt and same amount of damages.

The appellees pleaded that the merits of the replevin suit had not been tried, but that the plaintiff in the replevin suit had dismissed it at the October term, 1889, and averred that the goods and chattels were the property of said James Feeley and not of Calkins, and claimed that no greater damages should be assessed than one cent. On this plea a jury was called and the case heard, resulting in a verdict of $600 debt and one cent damages for appellees, and final judgment being entered thereon by the court, this appeal is taken.

The main points urged for reversal are that the said James Feeley, when he was served with the executions, did not, within ten days thereafter, make out a schedule of his property and present the same, as the statute required, and that therefore Feeley could not claim any exemption under the statute. It appears that Feeley did, however, within twelve days after the executions were read to him, and after the expiration of ten days, and after the levy, make out the requisite schedule and deliver it to the constable, showing all the property exempt.

The excuses offered by Feeley for not making out the schedule within the ten days was, that he supposed the executions were the same under which he had recently scheduled, and that the constable fraudulently misled him as to what executions he had with him, knowing that Feeley was under a false impression, and did not inform him of his error until after the ten days had expired. There are various errors assigned on the instructions given for Feeley, and also, that the verdict was against the weight of the evidence.

The modifications of appellant's instruction No. 5 were correct. Only nominal damages could be recovered if the

Morrissey v. Feeley.

hypothesis of the fore part of the instruction was fulfilled. As to the refusal of the appellant's eighth instruction, we do not deem it error.

There was no evidence on which to base the eighth instruction.

Feeley made no pretense that he failed to schedule because he did not understand the "nature of his duties and his legal rights." His contention was that he supposed the executions were the old ones under which he had already scheduled, and the answers made on cross-examination show nothing else. The instruction offered was not based on the evidence. There are no objections to the refusal to give any other of appellant's instructions, made in his argument, and we will notice no other.

We do not think that the appellees' third instruction was erroneous, as not being based on the evidence. There was evidence tending to show that Calkins purposely misled Feeley as to the executions being the old ones. The evidence tends to show that he intended to get the advantage of him if he could and procure a sale of Feeley's exempt property. He had had instructions from a lawyer not to tell a defendant in execution of his rights, and he did not in this case, and when Feeley, as he swears, told him, "I had scheduled against that execution with Tucker," he was silent, and the jury had a right to infer from his not disabusing Feeley's mind, that he was using subtlety and cunning to entrap him, in order to get his property to apply on a debt which was not entitled to it by law. We think there was evidence on which to base the instruction. We can find·no fault with appellees' instruction No. 4, as it was, evidently, Calkins' duty in some way to inform Feeley of the nature of the writ. This did not prevent the jury from finding, under appellant's instruction No. 4, that the reading it would be all that was necessary, which is all that instruction required.

We will now consider the case as to whether the verdict is so manifestly against the weight of the evidence that the judgment should be reversed for that reason. The evidence shows, to start on, that a few weeks before these executions had been

issued others had been issued on the same judgments, and Feeley had scheduled and shown thereby that his entire property was exempt from execution. It also shows that the executions in question followed close on the heels of the former ones. Why was this? There is no evidence that Feeley had acquired other property in the meantime. It must have been with the intention of harassing Feeley, or getting some legal advantage of him and getting his exempt property. The jury had a right to think that this was the purpose, and that the constable laid his plans with that view, and that Feeley was not fairly dealt with, and was induced to fail to make out his schedule within the ten days required, by artifice, and the want of a full and fair notice of what executions were held by Calkins.

The exemption laws are made for the poor and unfortunate, and should be liberally construed by the courts, and the rights of such debtors fully and freely upheld, without stint or grudging. No unfair advantage should be taken of them, and if there is not a full and fair notice given of the executions, they should be allowed additional time in which to make their schedule. This, we think, is the spirit and meaning of the law. We can not help but feel that justice has been fully done by the jury in this case, and the legal rights of Feeley upheld.

The appellant was not injured by the refusal of the court to give the propositions of fact asked to be given to the jury.

These were not controlling, and, if found in the affirmative, could have made no difference in appellant's case.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*